FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2016 FEB 16   PM 2: 27

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL W. FRANCK, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. _____ CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA
5:16-CV-85-OC-41PRL

**COMPLAINT FOR
PERMANENT INJUNCTION**

INJUNCTIVE RELIEF SOUGHT

The United States of America, Plaintiff, by and through its undersigned counsel, and on

behalf of the United States Food and Drug Administration ("FDA"), respectfully represents as

follows:

1.    This statutory injunction proceeding is brought under the Federal Food, Drug, and

Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), to permanently enjoin the defendant, Paul W.

Franck, an individual ("Defendant") from violating 21 U.S.C. § 331(k) by causing articles of

drug to become adulterated within the meaning of 21 U.S.C. §§ 351(a)(1), 351(a)(2)(A), and/or

351(c), and to become misbranded within the meaning of 21 U.S.C. § 352(a), while such drugs

are held for sale after shipment of one or more of their components in interstate commerce.

**Jurisdiction and Venue**

2.    This Court has jurisdiction over the subject matter and all parties to this action

under 28 U.S.C. §§ 1331, 1337, and 1345, and 21 U.S.C. § 332(a).

3.    Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c).

**Defendant**

4.    Paul W. Franck has owned and operated numerous compounding pharmacies in

the State of Florida over the past twenty years. At each establishment, he was responsible for

providing final approval for all decisions concerning its operations, including, but not limited to, manufacturing and quality operations. Defendant Franck currently holds a pharmacist license in the State of Florida, and is employed at Ambient Healthcare of Central Florida, 202 SW 17th Suite C, Ocala, Florida, within the jurisdiction of this Court.

5.      At each pharmacy, Defendant Franck and/or his employees manufactured, processed, packed, labeled, held, and/or distributed articles of drug for human or animal use, within the meaning of 21 U.S.C. § 321(g)(1), including sterile and non-sterile drugs. Sterile drugs include drugs that are labeled as sterile or otherwise purport to be sterile and drugs that, by nature of their intended use or method of administration, are expected to be sterile ("sterile drugs"). Defendant's sterile drugs have included, for example, antibiotics, antivirals, cardiovascular drugs, drugs for pain management, and total parental nutrition (TPNs).

6.      Most recently, Defendant Franck owned and operated Franck's Lab, Inc. d/b/a Trinity Care Solutions ("Trinity"). Trinity manufactured and distributed sterile injectable drugs for humans to patients throughout Florida. Defendant Franck sold Trinity in July 2014.

7.      Defendant Franck manufactured sterile drugs at Trinity using components that were shipped in interstate commerce, including, for example, components from Texas and Kansas.

## The Act's Requirements

8.      Under the Act, a "drug" includes any article that is "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," 21 U.S.C. § 321(g)(1)(B), or that is "intended to affect the structure or any function of the body . . . ," 21 U.S.C. § 321(g)(1)(C).

2

9.     A drug is deemed to be adulterated if it "consists in whole or in part of any filthy, putrid, or decomposed substance."  21 U.S.C. § 351(a)(1).

10.     A drug is deemed to be adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health."  21 U.S.C. § 351(a)(2)(A).

11.     A drug is deemed to be adulterated if its quality and/or purity falls below that which it is purported or represented to possess.  21 U.S.C. § 351(c).

12.     A drug is deemed to be misbranded if its labeling is "false or misleading in any particular."  21 U.S.C. § 352(a).

### FDA's May 2014 Inspection

13.     FDA inspected Trinity between May 12 and 23, 2014 ("May 2014 inspection"). The conditions observed by investigators during FDA's May 2014 inspection established that drugs manufactured and distributed by Defendant Franck were adulterated within the meaning of 21 U.S.C. § 351(a)(2)(A).  The insanitary conditions observed by FDA investigators during this inspection, included, but were not limited to, the following observations:

a.     Dead spiders, beetles, ants, wasps, and cockroaches were found in the ceiling panel directly above the sterile manufacturing area, the area where non-sterile gowns are stored and donned, and the sink where employees prepare for sterile processing;

b.     Technicians were observed using inadequate aseptic practices, including compounding sterile drugs while wearing nonsterile clothing;

c.     Investigators found clean room conditions that significantly compromised the drug products' sterility, such as (i) lack of sufficient physical barriers to prevent the introduction of contamination from nearby construction; (ii) lack of positive air pressure in the

3

clean room relative to surrounding rooms which compromises the cleanliness of the clean room's air; (iii) materials around the laminar flow hood's vent that were not cleanable and were potential sources of viable and non-viable particles; (iv) unsealed, damaged ceiling tiles made of material inappropriate for a clean room; (v) rust and flaking paint on the front edge of the flow hood's bench; and (vi) equipment placed directly under HEPA filters potentially obstructing unidirectional air flow; and

        d.      Aseptic processing areas were not adequately cleaned and sanitized to reduce the risk of microbial contamination during manufacturing.

14.     At the close of the May 2014 inspection, FDA investigators issued a Form FDA-483, List of Inspectional Observations ("FDA-483") to Defendant Franck and discussed their observations with him.

15.     By telephone calls on or around May 14, 2014, Defendant Franck notified his customers that he was recalling all sterile drug products within expiration that were manufactured at Trinity on or after May 5, 2014.  According to the firm's follow-up May 20, 2014 letter sent to customers, "the air quality in the [cleanroom] may have been compromised. The medications processed in the room at this time could have been exposed to increased particulate matter, and may lack sterility assurance."  Defendant Franck agreed to cease sterile operations on or around May 15, 2014, but advised FDA that he intended to resume operations after implementing corrective actions.

16.     In July 2014, Defendant Franck ceased all operations at Trinity and sold the pharmacy.

17.     Defendant violates 21 U.S.C. § 331(k) by causing articles of drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(A), in that they are prepared, packed, or

held under insanitary conditions whereby they may have been rendered injurious to health, while such drugs are held for sale after shipment of one or more of their components in interstate commerce.

### FDA's 2012 Inspection

18.    FDA inspected Defendant Franck's pharmacy, Franck's Lab, Inc. d/b/a Franck's Compounding Pharmacy, between March and May 2012.  FDA initiated this inspection following reports of eye infections in patients who had been administered an injectable sterile eye solution, Brilliant Blue G ("BBG"), and/or injectable drug products containing triamcinolone ("triamcinolone drugs") that had been compounded by Franck's Lab.

19.    FDA laboratory analysis of samples of Defendant's compounded BBG collected during this inspection revealed that the drug was contaminated with a fungus as well as other microorganisms, and these fungus-type organisms matched the clinical isolates from patients who developed eye infections after administration of this drug.

20.    During FDA's 2012 inspection, investigators observed and documented other conditions that established that Defendant Franck's drugs were adulterated and misbranded within the meaning of the Act, including but limited to the following:

a.    FDA laboratory analysis of environmental samples collected during the inspection revealed multiple bacterial and fungal species in several locations in the clean room;

b.    FDA investigators observed inadequate personnel aseptic practices, including (i) a compounding technician leaving and re-entering the cleanroom twice without changing his protective equipment; (ii) a technician touching the outside of a sterile glove with bare hands and then using that gloved hand to compound sterile products; and (iii) a technician touching a laminar flow hood's outer surface with gloved hands and then continuing to

5

compound sterile drugs; environmental samples of this hood's outer surface that had been collected two days prior to this observation were found to be contaminated with multiple organisms; and

          c.     FDA investigators observed unsealed ceiling panels in the clean room which are prone to accumulate dust and other particles and are potential sites for microbial contamination.

21.    At the close of the 2012 inspection, FDA investigators issued a FDA-483 to Defendant Franck and discussed their observations with him.

22.    In March 2012, Defendant Franck recalled all lots of BBG within expiry as well as all lots of drugs containing the triamcinolone drug. In May 2012, after FDA notified Defendant Franck of the results of the environmental samples collected during the inspection, he expanded the scope of the recall to include all sterile drugs (human and animal) compounded and distributed by Franck's Lab between November 21, 2011, and May 21, 2012.

23.    In June 2012, Defendant Franck notified FDA that Franck's Lab would cease all sterile compounding. He notified FDA that he had sold the pharmacy in July 2012.

24.    As of March 2, 2013, the United States Center for Disease Control had identified 47 cases of eye infections among 45 patients in 9 states linked to exposure to Defendant's BBG and/or triamcinolone drugs. Of the 40 patients from whom data was available, 39 (98%) suffered temporary or permanent vision loss.

25.    The microbiological contamination in Defendant's purportedly sterile drug products constitutes a filthy substance within the meaning of the Act, 21 U.S.C. § 351(a)(1).

26.    Defendant violated 21 U.S.C. § 331(k) by causing articles of drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(1), in that they consisted in whole or in

part of a filthy, putrid, or decomposed substance, while such drugs are held for sale after shipment of one or more of their components in interstate commerce.

27.     Defendant's purportedly sterile drugs contained microbiological contamination and thus fell below the quality and/or purity standards they purported to possess, within the meaning of the Act, 21 U.S.C. § 351(c).

28.     Defendant violated 21 U.S.C. § 331(k) by causing articles of drug to become adulterated within the meaning of 21 U.S.C. § 351(c), in that their purity or quality fell below that which it was purported or was represented to possess, while such drugs were held for sale after shipment of one or more of their components in interstate commerce.

29.     Some of Defendant's drugs were labeled as sterile or otherwise purported to be sterile and/or were drugs that, by nature of their intended use or method of administration, were expected to be sterile.  Because Defendant's purportedly sterile drugs contained microbiological contamination, Defendant's labeling for such drugs was false or misleading within the meaning of 21 U.S.C. § 352(a).

30.     Defendant violated 21 U.S.C. § 331(k) by causing articles of drug to become misbranded within the meaning of 21 U.S.C. § 352(a), in that their labeling was false or misleading, while such drugs were held for sale after shipment of one or more of their components in interstate commerce.

31.     Defendant violated 21 U.S.C. § 331(k) by causing articles of drug to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(A), in that they were prepared, packed, or held under insanitary conditions whereby they may have been rendered injurious to health (as alleged in paragraph 20 above), while such drugs are held for sale after shipment of one or more of their components in interstate commerce.

7

## Prior Inspections and Warnings

32.     FDA issued Defendant Franck a Warning Letter on July 9, 2012, stating that lots

of the firm's BBG drug product were: (a) adulterated within the meaning of 21 U.S.C.

§ 351(a)(1), in that the drugs consisted in whole or in part of a filthy, putrid, or decomposed

substance; (b) adulterated within the meaning of 21 U.S.C. § 351(c), in that the drugs strength

differed from, or its purity or quality fell below, that which they purported or are represented to

possess; and (c) misbranded within the meaning of 21 U.S.C. § 352(a), in that the drugs' labeling

was false or misleading.  FDA further notified Mr. Franck that all of his sterile drugs were

adulterated under 21 U.S.C. § 351(a)(2)(A), in that the drugs had been prepared, packed, or held

under insanitary conditions whereby they may have been contaminated with filth, or rendered

injurious to health.  The Warning Letter stated that failure to correct the cited deviations could

result in legal action, including injunction.

33.     FDA previously inspected Defendant Franck's pharmacy (named Franck's Lab

Inc. d/b/a Franck's Compounding Pharmacy) in May 2009 following the deaths of 21 polo

ponies that had received drugs compounded by this pharmacy.  At the close of the 2009

inspection, FDA investigators issued a FDA-483 to Defendant Franck and discussed the FDA-

483 observations with him.

34.     In 2010, the United States filed a complaint for permanent injunction in the

United States District Court for the Middle District of Florida (5:10-cv-00147-TJC-GRJ (Apr.

16, 2010)) against Mr. Franck and his then pharmacy, Franck's Lab Inc. d/b/a Franck's

Compounding Pharmacy, seeking to enjoin them from introducing into interstate commerce

drugs that were adulterated and misbranded within the meaning of 21 U.S.C. §§ 351(a)(5)

and 352(f)(1), respectively.  That case concerned the FDA's authority to regulate the

compounding of animal drugs from bulk drug substances. The district court granted defendants' motion for summary judgment in September 2011. The parties subsequently agreed to dismiss the appeal, filed by the government, and vacate the district court's ruling after Mr. Franck sold that pharmacy in 2012. The district court's ruling does not impact this current action in which the United States alleges violations of different provisions of the Act that FDA has the authority to administer.

35.     FDA has inspected Defendant Franck's various pharmacies numerous times since 1993 (including in February 1993, November 1993, May 1997, and September – October 2004), and each time documented violations of the Act. FDA issued FDA-483s to Defendant Franck at the conclusion of each inspection (with the exception of the May 1997 inspection), notifying him of the violative conditions observed, and issued Warning Letters to Defendant Franck in August 1993, June 1997, and January 2005, citing the various violations of the Act observed during FDA's inspections. All of FDA's Warning Letters stated that failure to correct the cited deviations could result in legal action, including injunction.

36.     FDA has observed and documented violations of the Act at numerous pharmacies owned and controlled by Defendant Franck over the past twenty years. Despite FDA's repeated warning and his promises to correct his deficiencies, Defendant Franck has shown himself to be unwilling or unable to manufacture drugs in compliance with the Act.

37.     Plaintiff is informed and believes that, unless restrained by the Court, Defendant will continue to violate 21 U.S.C. § 331(k), in the manner alleged herein.

WHEREFORE, Plaintiff respectfully requests that this Court:

I.     Permanently restrain and enjoin Defendant and each and all of his directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all

persons in active concert or participation with any of them from manufacturing, processing, packing, labeling, holding, and distributing any article of drug, unless and until Defendant brings his manufacturing, processing, packing, labeling, holding, and distribution operations into compliance with the Act and its implementing regulations to the satisfaction of FDA;

II.     Permanently restrain and enjoin under 21 U.S.C. § 332(a) Defendant and each and all of his directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, from directly or indirectly violating 21 U.S.C. § 331(k) by causing any drug to become adulterated within the meaning of 21 U.S.C. §§ 351(a)(1), 351(a)(2)(A), and/or 351(c), and/or misbranded within the meaning of 21 U.S.C. § 352(a), while such drug is held for sale after shipment of one or more of its components in interstate commerce;

III.     Authorize FDA pursuant to this injunction to inspect Defendant's places of business and all records relating to the receipt, manufacture, processing, packing, labeling, holding, and distribution of any drug to ensure continuing compliance with the terms of the injunction, with the costs of such inspections, including testing and sampling, to be borne by Defendant at the rates prevailing at the time the inspections are accomplished; and

IV.     Award Plaintiff costs and other such relief as the Court deems just and proper.


DATED this ___ day of February, 2016.

10

25

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

JONATHAN F. OLIN
Deputy Assistant Attorney General

MICHAEL S. BLUME
Director

JEFFREY I. STEGER
Assistant Director

OF COUNSEL:

WILLIAM B. SCHULTZ
General Counsel

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Division

ANNAMARIE KEMPIC
Deputy Chief Counsel for Litigation

MICHELE SVONKIN
Senior Counsel
United States Department of
Health and Human Services
Office of the General Counsel
Food and Drug Administration
Building 32, Room 4308
10903 New Hampshire Avenue
Silver Spring, MD 20993
(301) 796-8719

ROGER J. GURAL
Trial Attorney
Georgia Bar No. 300800
Consumer Protection Branch
United States Department of Justice
Civil Division
P.O. Box 386
Washington, D.C. 20044
Phone: (202) 307-0174
Fax: (202) 514-8742
Roger.Gural@usdoj.gov

11